

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 25, 1952

Hon. R. C. Lanning
Chairman
State Board of Control
Austin, Texas

Opinion No. V-1511

Re: Several questions relating
to the administration of
the school bus purchasing
law by the State Board of
Control.

Dear Sir:

We refer to your request for an opinion of
this office which, in substance, states the following:

Certain questions have arisen concern-
ing the administration of the school bus
purchasing program created by Section 3 of
Article V, Senate Bill 116, Acts 51st Leg.,
R.S., 1949, ch. 334, at p. 638 (Art. 634
(b) V.C.S.) and Senate Bill 90, Acts 52nd
Leg., R.S., 1951, ch. 198, p. 325, Sec. 1,
creating the School Bus Revolving Fund,
(Art. 2922-15, Sec. 2, V.C.S.).

As presently operated, all school buses
being purchased are bought F.O.B. School Bus
Inspection Station, New Boston, Texas. This
inspection station is in reality the Bowie
County Education Agency Garage. The County
Superintendent and County Board of School
Trustees of Bowie County have made the inspec-
tion and storage facilities of their agency
available to the State Board of Control on a
no-charge basis.

You ask the following questions:

1. Under the statutes, may the State
Board of Control designate as its agent with-
out remuneration an employee of the Bowie
County Education Agency with authority to
receive new buses from vendors and sign for
them so that the State Board of Control may
legally pay the vendor - the proposed agent
being willing to serve in such capacity
without pay?

2. Should a bus become damaged while at the inspection station and title thereto then being in the State Board of Control, is the State Comptroller authorized to approve an invoice for the repair of this unit from the same fund (Item 71 of the general appropriations to the State Board of Control, H. B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, at p. 1327) from which regular Board of Control vehicles are repaired?

3. If, after the State Board of Control has received a valid requisition for a school bus from a school district, and a purchase order has been executed following the receipt of competitive bids, may the school district refuse to accept the bus purchased providing it meets all specifications?

Article 634 (B), Vernon's Civil Statutes insofar as same are pertinent to this opinion provides as follows:

"All motor vehicles used for transporting school children, including buses, bus chassis, and bus bodies, . . . purchased for or by any school district participating in the Foundation School Program, shall be purchased by and through the Board of Control . . . and no school district nor its officers or employees nor the County School Board shall have the power to purchase for such school district any of such items except in those instances wherein an emergency requires an immediate purchase thereof, to be reported to and approved by the Board of Control.

"Such motor vehicles . . . shall be purchased on competitive bids under such rules and regulations as may be made by the Board of Control. Such purchases shall be made on requisition of a County School Board or a school district. Requisitions, if for the purchase of motor vehicles, buses, bus bodies, or bus chassis, must be presented to and receive the approval of the County School Board and the State Commissioners of Education . . . If, due to climatic and/or road

conditions, special equipment is required
to guarantee adequate safety and comfort of
school children, the school district shall
state and describe such requirements in its
requisition and the Board of Control shall
be required to purchase such equipment that
said Board determines is adapted or designed
for such conditions or requirements.

" . . .

"Compliance with this Section shall be
a condition precedent to participation in
the Foundation School Fund, and any school
district failing or refusing to comply with
the terms and conditions of this Section
shall be ineligible to share in the Founda-
tion School Fund for one year from the date
of such failure or refusal or such violation
of the terms hereof.

"This Section shall not require the
purchase of buses, bodies, chassis, . . .
through the Board of Control, where the
funds therefore are provided by gifts, pro-
fits from athletic contests or other such
school enterprises in no way supported by
tax funds or grants or appropriations from
any government agency, either State or
Federal.

"Any such school district making re-
quisitions for purchase of any of the above
named articles shall, when sending in the
requisition therefor, include therewith a
general description of the article desired
and shall certify the funds that will be
available to pay therefor.

" . . .

"The Board of Control shall have the
power to make rules or adopt regulations to
effectuate the purpose of this Act."

Section 2 of Article 2922-15, V.C.S., as amended
by Senate Bill 90, Acts 52nd Leg., supra, provides in part
as follows:

"Motor vehicles used for the purpose
of transporting school children, including
school buses, chassis and/or bodies of school
buses purchased through the State Board of
Control as provided for in Section 3 of this
Act /codified as Art. 634 (B) in Vernon's
Civil Statutes7 shall be paid for by the
State Board of Control and there is hereby
appropriated out of any money in the State
Treasury not otherwise appropriated, a sum
of . . . ($250,000.00) . . . or so much there-
of as necessary, to the State Board of Control
to be used for such purchases.

"The . . . ($250,000.00) . . . hereby
appropriated shall be known as the School
Bus Revolving Fund and when the school buses
provided for in this Act are delivered to
the various schools coming within the pro-
visions of this Act, the governing bodies
of such schools shall reimburse the State
Board of Control for the money expended for
such school buses, motor vehicles, chassis
and/or bus bodies provided for herein and
such money shall be deposited by the State
Board of Control to the School Bus Revolving
Fund."

Under the discretionary authority set out in
Article 634 (B), if the Board, deems it necessary to have
an agent to inspect and receive at a given location the
new buses purchased in accordance with the act, it could
designate any person as its agent to effectuate those
necessary purposes, where the designation would not be in
contravention of existing statutory or constitutional
provisions.

According to the submitted facts, the person
contemplated as such agent is a paid employee of the Bowie
County School Board, in charge of the garages and school
buses operated in the Bowie County school transportation
system. He is willing to act as agent for the State
Board of Control without compensation. Section 40 of
Article XVI, Constitution of Texas, prohibiting the hold-
ing by one person at the same time of two civil offices
of emolument would have no application here, for the
positions of garage superintendent and agent of the State
to inspect and receive new school buses for the State
Board of Control are not civil offices. Section 33 of
Article XVI, supra, would have no application here because

no compensation is contemplated for services as agent. Nor can we conceive of a sound basis upon which it may be said that the respective duties of the two positions would be incompatible. Att'y Gen. Op. V-63 (1947).

Accordingly, it is our opinion that the State Board of Control acting under its discretionary powers granted in Article 634 (B), may designate an employee of the Bowie County School Board as its agent, without remuneration, to inspect and receipt for the State Board such school buses as it purchases under the statute.

Concerning your second question, you have further advised that under the Board's administration of the bus purchasing statute /Art. 634 (B)7 title to the bus is placed in the State of Texas when the vendor is paid with School Bus Revolving Funds, appropriated in Section 2 of Article 2922-15, Vernon's Civil Statutes. That revolving fund was created, of course, to facilitate payments for duly requisitioned buses purchased by the Board under Article 634 (B). School buses purchased by the Board under the law are purchased for particular school districts, and not for the State or any of its departments. Though title to such a purchased bus temporarily is in the State of Texas, the State holds such title in trust for the particular school district which requisitioned it, until such time as the district reimburses the Fund for the purchase cost expended. In no sense may the bus be regarded as having been purchased for the State of Texas or its Board of Control, because the School Bus Revolving Fund is not available for such purposes.

The departmental appropriation in House Bill 426, supra, which may be available for maintenance and repair of the automotive equipment of the State Board of Control, having been specifically appropriated for that purpose, clearly may not be used for a purchase foreign to its intendment, such as, the maintenance and repair of school buses purchased by the State Board of Control as statutory bus purchasing agent for school districts. It is observed that in the law first establishing the State Board of Control as agent for the purchase of school buses (H. B. 295, 50th Leg., R.S. 1949, ch. 228, p. 401) that legislative appropriation was made to the Board to provide for maintenance, equipment and contingent expenses as may be needed to effectuate the purpose of the law. See Sec. 2 of Art. XIII and Art. XIV of H. B. 295, supra, at pp. 414 and 416. We find no appropriation made by the 52nd Legislature

to the Board for the repair or maintenance of school buses damaged while in its care.

Therefore, it is our opinion that the State Comptroller would be without authority to approve an invoice for the repair of a school bus purchased by the State Board of Control under the provisions of Article 634 (B), damaged while in the care of the Board or its agent, for the reason that no appropriation has been made available for such purposes.

With respect to your third question, you have further advised that school buses have been purchased by the State Board of Control which meet all of the specifications or general description expressed in the requisition of the school district, except that the bus is not the product of a particular motor company named in the requisition. Further, that some school districts are refusing to accept school buses purchased on their requisition merely because the bus is not an X-Company constructed bus for which they made request. Your question is whether the school districts can rightfully refuse to accept buses which meet all other specifications.

Article 634 (B) expressly provides that new school buses purchased by the State Board of Control upon proper requision from school districts of this State "shall be purchased on competitive bids." The statute also specifically authorizes school districts to describe in their requisition "special equipment required to guarantee adequate safety and comfort of school children" where needed to meet certain climatic and road conditions, and provides that the requisition "shall include therein a general description of the article desired." These express provisions authorize only a "general description" of the bus specifications desired by the school district. School districts are not empowered thereunder to insist that the bus be a product of a particular manufacturer. The act requires that the State Board purchase requisitioned buses on "competitive bids", and therefore requires that the Board invite bids generally on buses that meet the general description of the bus desired. As stated in Attorney General's Opinion V-938 (1949), the spirit and purpose of Article 634 (B) as a whole is to require that school districts purchase its buses through the one agency, the State Board of Control on a competitive bid basis to the end that such districts shall realize full value for the money they acquire through Foundation School Fund participation. The Legislature's primary concern was that costs of such school bus transportation be minimized by purchase of necessary bus equipment at the lowest cost.

Accordingly, it is our opinion that a school district is not authorized to list in its requisition for the purchase of a school bus a binding specification that the bus be the product of a particular manufacturer. Further, a school district may not legally refuse to accept the bus purchased by the State Board of Control for it on requisition, providing it meets all other specifications.

## SUMMARY

Under the administrative powers granted in Article 634 (B), V.C.S., the State Board of Control may designate an employee of Bowie County School Board as its agent, without remuneration, to inspect and receipt for school buses purchased under that law.

The State Comptroller of Public Accounts may not approve for payment out of funds appropriated to the State Board of Control for repair of its vehicles, an invoice for the repair of a school bus purchased by the Board of Control under Article 634 (B).

Article 634 (B) does not authorize a school district to list as a binding specification in its requisition to the Board of Control for the purchase of a school bus that the bus be the product of a particular manufacturer. A school district may not refuse to accept for that reason a bus which meets all other specifications than one disignating that the bus be the product of a particular manufacturer.

Yours very truly,

APPROVED:

J. C. Davis, Jr,
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

CEO:am

PRICE DANIEL
Attorney General

By

Chester E. Ollison
Assistant